Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6433 | **DATE** | 4/16/2002 |
| **CASE TITLE** | International Financial Services Corporation vs. Didde Corporation, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Chromas Technologies, Inc. and Chromas Technologies Canada, Inc's. Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons set forth in the attached Memorandum Opinion and Order, Chromas Technologies, Inc. and Chromas Technologies Canada, Inc.'s motion for summary judgment is DENIED [55-1].

(11) ■ [For further detail see order attached to the original minute order.]

|   | | | | Document Number |
|---|---|---|---|---|
|   | No notices required, advised in open court. | | number of notices | |
|   | No notices required. | | | |
|   | Notices mailed by judge's staff. | | APR 18 2002 | |
| X | Notified counsel by telephone. | | date docketed | 92 |
|   | Docketing to mail notices. | | CDY | |
|   | Mail AO 450 form. | | docketing deputy initials | |
|   | Copy to judge/magistrate judge. | | | |
| klb (lc) | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| INTERNATIONAL FINANCIAL<br>SERVICES CORPORATION,<br><br>    Plaintiff,<br><br>    v.<br><br>DIDDE CORPORATION, et al.,<br><br>    Defendant. | **DOCKETED**<br><br>**APR 1 8 2002**<br><br>No. 00 C 6433<br><br>HONORABLE DAVID H. COAR |

### MEMORANDUM OPINION AND ORDER

Plaintiff, International Financial Services Corporation ("IFSC") filed a five count Amended Complaint in this Court alleging breach of contract, fraud, conspiracy to defraud, unjust enrichment, and constructive trust against, inter alia, Didde Corporation ("Didde"), Didde Web Press Corporation ("DWP"), Chromas Technologies, Inc. ("CTI") and Chromas Technologies Canada, Inc. ("CTC"). Before this court is CTI and CTC's motion for summary judgment pursuant to Fed. R. Civ. P. 56 against plaintiff IFSC. CTI and CTC argue that summary judgment should be granted in their favor because they should not be held liable since the name Chromas Technologies, as it appeared on the contract, referred merely to a trade name for the combination of three different technologies (Aquaflex, Zig Zag and Webtron) and not a separate corporate entity. According to CTI and CTC, Chromas Technologies was merely a division of DWP. IFSC maintains, however, that the defendants communicated to the world that Chromas Technologies was a new, separate corporation, that merged Aquaflex, Zig Zag and

-1-



Webtron into a new company. Thus, according to IFSC, they should be held accountable for their representation and summary judgment should be denied. For the reasons set forth below, CTI and CTC's motion for summary judgment is denied.

## I. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Michael v. St. Joseph County, et. al, 259 F.3d 842, 845 (7th Cir. 2001). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-movant, a reasonable jury could return a verdict for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 931 (7th Cir. 1995).

Because the purpose of summary judgment is to isolate and dispose of factually unsupported claims, the non-movant must respond to the motion with evidence setting forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e); Michael, 259 F.3d at 845; Albiero v. City of Kankakee, 246 F.3d 927, 932 (7th Cir. 2001). To successfully oppose the motion for summary judgment, the non-movant must do more than raise a "metaphysical doubt" as to the material facts, see Wolf v. Northwest Ind. Symphony Soc'y, 250 F.3d 1136, 1141 (7th Cir. 2001) (citation and quotation omitted), and instead must present definite, competent evidence to rebut the motion, see Albiero, 246 F.3d at 932. Rule 56(c) mandates the entry of summary judgment against a party "who fails to make a showing sufficient

to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322, 106 S. Ct. at 2552-53. A scintilla of evidence in support of the non-movant's position is not sufficient to oppose successfully a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 250, 106 S. Ct. at 2511.

## II. Factual Background

IFS is an Illinois corporation engaged in the business of industrial equipment leasing and financing. Defendant Didde manufactured printing presses through various subsidiaries. DWP, a subsidiary of Didde, manufactured narrow web offset printing presses in Emporia, Kansas. DWP also manufactured "Webtron" and "Zig Zag" brand flexographic presses through its "Webtron" division in Fort Lauderdale, Florida. Didde and DWP filed for bankruptcy in December 2000.

In 1991, Didde purchased Aquaflex which was located in Montreal, Canada. Aquaflex, like Webtron, manufactured flexographic presses. Didde's sale force sold "Webtron," "Aquaflex," and other lines of printing presses in North America. In February 1991, Aquaflex Systems, Inc. changed its name to Chromas Technologies Canada, Inc. ("CTC"). In 1994, Didde incorporated Didde Technology Corporation ("DTC"), a wholly owned subsidiary. The business of DTC was investment. DTC never built or sold any presses or had any employees. In March 1999, DTC changed its name to Chromas Technologies, Inc. ("CTI"). According to David Didde, the business of DTC was unaltered by the name change. In September, 2000, Didde sold CTI and CTC to American Capital Strategies, Inc. ("ACS").

The dispute in this case arises from IFSC's financing of the manufacture of a printing press (the "Press") purchased by a third party, Label Tech, Inc. ("Label Tech") from DWP in September 1999. The cost of the Press was $1,870,342. In October, 1999, IFSC and DWP entered into a Vendor Repurchase Agreement whereby DWP agreed to buy back the Press if certain preconditions occurred. Neither the contract or the Vendor Repurchase Agreement specified a completion date for the Press. The construction of the Press was never completed. Payments for the contract were made on behalf of Label Tech by IFSC to "Chromas Technologies." On an invoice dated 9/27/99, the address listed for payment to "Chromas Technologies" was 1200 Graphic Arts Road, Emporia, KS 66801 (the address of DWP). On invoices dated 1/6/2000 and 1/27/2000, the address listed for payment to "Chromas Technologies" was 2030 W. McNab Road, Fort Lauderdale, FL 33309 (the address of Webtron). Other payments were effectuated by wire transfer. All payments were deposited into a Bank of America account titled "Chromas Technologies c/o Didde Web Press" 1200 Graphic Arts Road, Emporia, KS 66801-6231. In December 2000, a DWP employee, Frank Laughlin, in a telephone conversation with Seeds, asked IFSC to accelerate installment payments on the Press in order to prevent potential delays in its manufacture. At the time of Frank Laughlin's call, the Press was off schedule.[1]

Prior to June 2000, payments by customers were deposited into DWP's general operating funds and used to fund the general operations of the business. Beginning in June 2000, customers, including Label Tech, were asked to make any future installment payments on

---

[1] The parties dispute whether Laughlin knew that the manufacture of the Press was off of schedule when he made the call.

-4-

unfinished presses into escrow accounts to be maintained for each unfinished press.[2] IFSC made a total of $949,650 in payments on behalf of Label Tech. In September 2000, Label Tech and IFSC declined to advance any funds for the Press and, according to Seeds, Label Tech orally cancelled the contract.

DWP was having financial difficulties and hired consultants to investigate ways to increase liquidity. Part of the plan recommended by the consultants was to sell CTI and CTC to raise cash to enable its overall business to go forward and to complete the Press and other presses on order. In September 2000, Didde sold all of its interests in CTI and CTC to American Capital Strategies, Inc. ("ACS"), for approximately $7 million. The sale of CTI and CTC was intended to allow Didde to continue operations by reducing its debt obligations and bringing in cash. After the sale, neither Didde, DWP, nor any other Didde entity retained any ownership interests in CTI or CTC.

III. Discussion

CTI and CTC argue that summary judgment is appropriate in this case because Chromas Technologies was a brand name for Aquaflex, Zigzag, and Webtron. CTI and CTC assert that "Chromas Technologies" was merely a division of DWP and that neither CTI nor CTC ever contracted with IFSC. Thus, according to CTI and CTC, any obligations to IFSC are DWP's obligations and it is inappropriate to pierce the corporate veil of DWP in order to reach its former subsidiaries CTI and CTC. IFSC argues that following the corporate formality here and failing to pierce the corporate veil of DWP would sanction a fraud or promote an injustice because

---

[2]IFSC asserts that "Chromas Technologies" asked customers to make deposits into escrow accounts whereas CTI and CTC maintain that DWP asked its customers to make the deposits into escrow accounts.

-5-

"Chromas Technologies" held itself out as a merged company that was composed of Aquaflex, Webtron and Zigzag.

"It is a well-established principle that a corporation is separate and distinct as a legal entity from its shareholders, directors and officers and, generally, from other corporations with which it may be affiliated." Main Bank of Chicago v. Baker, 86 Ill.2d 188, 204, 427 N.E.2d 94, 102 (1981). The court, guided by equitable principles, has the power to disregard the corporate fiction based upon the circumstances of a particular case. Stap v. Chicago Aces Tennis Team, Inc., 63 Ill. App. 3d 23, 379 N.E.2d 1298, 1302, 20 Ill. Dec. 230 (1978). Nonetheless, the power is invoked sparingly, in view of the important and salutary policies underlying the grant of limited shareholder liability. CM Corp. v. Oberer Dev. Corp., 631 F.2d 536, 541 (7th Cir. 1980).

The law of Illinois requires two traditional factors to be shown before a corporate veil can be pierced:

> first, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and second, circumstances must be such that an adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice.

Gallagher v. Reconco Builders, Inc., 91 Ill. App. 3d 999, 1004, 415 N.E.2d 560, 563-64, 47 Ill. Dec. 555 (1980). The second element of the Illinois alter ego test requires "either the sanctioning of a fraud (intentional wrongdoing) or the promotion of injustice." Van Dorn Co. v. Future Chemical and Oil Corp., 753 F.2d 565, 570 (7th Cir. 1985). The degree of control one entity holds over another has been measured in Illinois by evidence of misrepresentation; commingling of funds, assets, or <u>identities</u>; undercapitalization; failure to operate at arm's length; and failure to comply with corporate formalities. Main Bank of Chicago v. Baker, 86 Ill. 2d 188, 427 N.E.2d

94, 102, 56 Ill. Dec. 14 (1981). See also Harry G. Henn, Laws of Corporations, 355-56 (3rd ed. 1983) (explaining that in the case of a subsidiary, the separate corporate entities will be recognized unless the respective enterprises are not held out to the public as separate enterprises). The alter ego relationship is a question of fact to be determined by the circumstances of each case. See Southport Petroleum Co. v. NLRB, 315 U.S. 100, 106, 86 L. Ed. 718, 62 S. Ct. 452 (1942).

In this case, facts support the plaintiff's claim that defendants' affirmative representations and failure to delineate between its operations and those of DWP mislead them into believing they were dealing with the subsidiary when in fact they were dealing with the parent corporate entity. There were press releases, which CTC and CTI claim were incorrect, which called "Chromas Technologies" a new merged company. Aquaflex, now known as CTC, was one of the three companies that was a part of "Chromas Technologies." Further, checks for the Press were made out to "Chromas Technologies" which apparently reinforced IFSC's belief that it was deaing with a corporate entity. The web site on the press release was www.chromas.com, which makes it harder to distinguish between "Chromas Technologies" and CTC. In addition, there are conflicting affidavits on the issue of whether CTC was treated as an entity separate from "Chromas Technologies." Thus, there is a question of material fact as to whether DWP, CTC and CTI commingled their identity through the use of "Chromas Technologies" as a "brand name" such that IFSC believed that it was dealing with a separate corporate entity by the name of "Chromas Technologies" rather than merely a division of DWP. Further, significant factual issues remain to be decided with respect to the alleged false inducement of funds from IFSC

when the Press was not actually under construction and the use of said funds to finance the general operations of the business.

## Conclusion

For the foregoing reasons, CTI and CTC's motion for summary judgment is DENIED. There are genuine issues of material fact regarding the relationship between CTI, CTC, DWP and "Chromas Technologies" that must be decided at trial.

Enter:

David H. Coar
United States District Judge

Dated: 4/16/2002